## Independent Coal Dealers Protective Association et al. v. Logue et al.

*Joseph Sharfsin*, for plaintiffs.

*Charles J. Margiotti*, Attorney General, and *A. Lee Edwards*, Deputy Attorney General, for defendants.

WICKERSHAM, J., December 16, 1935.—This is an action by the plaintiffs seeking to enjoin the defendants

from bringing any prosecution against the plaintiffs; from making arrests or in any way interfering with Alexander Samec or other persons engaged in the business of hauling solid fuel into the City of Philadelphia; from issuing licenses to inspectors and weighmasters as officers having authority to issue correct weight certificates; and from carrying into effect or enforcing any of the provisions of the Act of July 19, 1935, P. L. 1356.

The bill of complaint alleges, inter alia, that the Independent Coal Dealers Protective Association is a corporation composed of truckers who are engaged in the business of hauling solid fuel from the mines to cities and towns in Pennsylvania where said solid fuel is purchased from them by consumers; that Alexander Samec is engaged in the business of hauling solid fuel from the mines in Pennsylvania to cities and towns in the Commonwealth where it is sold to consumers, and that he holds a license issued by the City of Philadelphia; that in August 1935 he was engaged in hauling solid fuel from Minersville to Philadelphia when he was arrested for failure to have a weighmaster's certificate in accordance with the provisions of said act of assembly, and was fined and required to pay the costs; that he fears further arrests by the inspectors and officials licensed by the Secretary of Internal Affairs and other persons exercising alleged authority pursuant to the said act if he continues to haul solid fuel from the mines to the City of Philadelphia; that the Independent Coal Dealers Protective Association also fears that the said inspectors will stop the trucks and cause warrants to be issued for any and all and every member of its association who hauls solid fuel to Philadelphia without having in their possession at the time of such hauling a weight certificate for such solid fuel.

The plaintiffs further aver that the said act of assembly is invalid and unconstitutional in that it violates article III, sec. 27, of the Constitution of Pennsylvania. The plaintiffs pray for equitable relief as above set forth.

To the allegations in plaintiffs' bill of complaint the

defendants have filed an answer raising preliminary objections thereto, alleging: (1) The complainants have a full, complete, and adequate remedy at law; (2) a court of equity will not restrain the enforcement of a penal statute; (3) a court of equity is not the proper court to act in an advisory capacity in interpreting the constitutionality of an act.

*Discussion*

The title of the Act of 1935 is:

"An act to regulate the sale and delivery of solid fuel, as herein defined; providing for appointment of licensed weighmasters; prescribing their powers and duties; authorizing substitute licensed weighmasters; imposing certain duties on the Department of Internal Affairs; and providing penalties."

Section 1 of the act defines "solid fuel" as anthracite, semi-anthracite, bituminous, semi-bituminous, or lignite coal, briquettes, etc. The term "person" is to be construed to include any individual, partnership, unincorporated association, or corporation.

Section 2 provides:

"It shall be unlawful to sell solid fuels excepting by weight. No person shall sell or deliver, or start out for delivery, less than two thousand (2,000) pounds of weight to the ton of any solid fuel or a proper proportion thereof in quantities less than a ton, and such solid fuel shall be duly weighed by a licensed weighmaster on accurate scales".

Section 3 provides:

"No person, upon the sale of solid fuel, shall deliver, or cause to be delivered, or to be started out for delivery, any solid fuel, without each lot, in each separate compartment of any vehicle or vehicle and trailer, being accompanied by a weight certificate, issued by a licensed weighmaster, on which shall be distinctly expressed:

"(*a*) In pounds, the weight, kind, and size of the solid fuel;

"(*b*) The name of the seller;

"(*c*) The name of the purchaser;

"(*d*) The license number of the vehicle; and

"(*e*) The signature of the licensed weighmaster by whom weighed.

"In all cases the weight certificate shall be delivered to the purchaser.

"When solid fuel is sold in lots of less than one hundred (100) pounds, the provisions of this section shall not apply if the solid fuel is delivered in closed containers or closed bags, and the net contents of such bag or container, expressed in pounds, is plainly stamped or printed thereon, or upon a tag securely attached thereto. This section shall not apply to the sale of a boatload or railroad carload of solid fuel delivered direct from the boat or car to one purchaser, and accepted as to weight by the purchaser on the bill of lading or other voucher issued by the carrier."

Section 4 provides:

"Where any person shall, for practical reasons, be unable to deliver solid fuel to the purchaser originally designated in the weight certificate, he may, under specific authority of any licensed weighmaster, substitute the name and address of another purchaser: Provided, That report of such substitution is made to the licensed weighmaster within twenty-four hours."

Section 5 provides, inter alia:

"Any weights and measures official of this State, or of any local government of this State, who finds any quantity of solid fuel ready for or in process of delivery, may direct the person in charge of the solid fuel to convey the same to the nearest available accurate scales designated by said official. Such official shall thereupon determine the weight of the solid fuel, and the vehicle on which it is carried, and shall direct such person in charge to return to such scales forthwith upon unloading the solid fuel, and upon such return, the official shall determine the weight of the vehicle without load."

Section 6 provides, inter alia:

"No person shall make or issue a weight certificate of solid fuel unless licensed by the Secretary of the Department of Internal Affairs of this Commonwealth." Said section also provides how applications shall be made, the cost of procuring the same, and the term for which the license is issued.

Section 7 provides that:

"It shall be unlawful for any weighmaster to issue a false or incorrect weight certificate, or for any person to solicit him to do so. It shall be unlawful for any person knowingly to use a false or incorrect weight certificate, or to use a weight certificate not bearing the signature of a licensed weighmaster, and the license number of the vehicle."

Section 8 provides a penalty for violation of the provisions of the act, to be recovered upon summary conviction.

Section 9 provides, inter alia, that:

"The provisions of this act are severable, and if any of its provisions shall be held unconstitutional, the decision of the court shall not affect or impair any of the remaining provisions of the act."

Section 10 provides:

"This act shall not apply to the sale and distribution of solid fuel to persons residing within a radius of ten miles from the place where such solid fuel is produced, unless the purchaser shall require such solid fuel to be weighed as provided herein, and/or unless the delivery shall be made to persons residing within the limits of a municipality requiring the said solid fuel to be weighed."

Section 11 provides: "This act shall become effective immediately upon final enactment". Section 12 repeals former acts in relation to the subject matter of this act.

The burden of the complaint of the plaintiffs is that they fear they will be arrested and summary proceedings instituted against them if they fail to comply with the provisions of the act. It is the contention of the defend-

ants that a court of equity will not restrain the enforcement of a penal statute. We think this objection is sound.

In Long et al. v. Metzger et al., State Board of Medical Education, etc., 301 Pa. 449, it was held (fifth, seventh, ninth syllabi) :

"An injunction will not be granted to stay criminal or quasi-criminal proceedings, whether the prosecution is for the violation of the common law or the infraction of statutes or municipal ordinances, nor to stay the enforcement of orders of a state commission. . . .

"If the statute on which the prosecution is based is valid, the fact that the enforcement thereof would materially injure complainant's business or property constitutes no ground for equitable interference. . . .

"Courts will not interfere by injunction where the injury inflicted or threatened is merely the vexation of arrest and punishment of the complainant, who is left free to litigate the question of unconstitutionality of the statute or ordinance or its construction or application, in making his defense at the trial or prosecution for its violation."

Writing the opinion of the Supreme Court it is said by Mr. Justice Schaffer (see p. 455) :

" 'The remedy at law by indictment and prosecution, is presumed to be adequate, but, if it is not so, the relief must come from the lawmaking power, and not from the courts. This rule which prevents a court of chancery from interfering with the administration of the criminal laws of the State is a wise one, founded on sound principles of public policy. Any other would result in much confusion and embarrassment in preserving peace and order and enforcing the police powers of the State generally' ".

Plaintiffs refer to Martin v. Baldy, 249 Pa. 253, which holds:

"A court of equity will not ordinarily enjoin a criminal proceeding against a single individual, but where a mul-

tiplicity of suits may be prevented, or where an initial, fundamental question of constitutionality or legal right is involved, equity will assume jurisdiction."

The plaintiff Samec fears further arrests by the said Charles S. Sands, and other inspectors and officers licensed by the Secretary of Internal Affairs and other persons exercising the said authority pursuant to the alleged act of assembly, if he continues to haul solid fuel from the mines to the City of Philadelphia for the purpose of making sales of such solid fuels in the City of Philadelphia. We are at a loss to understand how the plaintiff Alexander Samec represents other persons engaged in the same business who have not joined as plaintiffs in the suit now pending, and therefore so far as he is concerned the authority from which we have just quoted does not apply to him.

The bill sets out in the ninth paragraph that Alexander Samec was arrested in the City of Reading, pursuant to a warrant issued against him for a violation of the act under discussion, was adjudged guilty and paid a fine and costs. On the very face of the bill there appears to have been a proceeding in which he could have raised all the constitutional questions that he now raises in this bill. Instead of raising them he paid his fine and costs, and now avers that he fears other arrests. There is nothing in the bill which in any way discloses that every pertinent and material question raised by it could not have been presented as a defense in the case in which he was made defendant in the City of Reading.

Now the plaintiff Independent Coal Dealers Protective Association alleges that it has been informed through its officers, by State police and inspectors, that they will stop their trucks and cause warrants to be issued for any and all and every member of the association who hauls solid fuels to Philadelphia without having in his possession at the time of such hauling a weight certificate for such solid fuels. We think this corporation is not a proper party litigant in the instant case. It is not

shown by the bill of complaint that it has any interest as a corporation; it is not a party in interest. No rights are threatened to its corporate existence. It is not incorporated for the purpose of prosecuting law suits for its members. We think the corporation as such has no legal interest in this litigation. If the members of this association have any rights to be protected in equity they are property rights and as property rights they are individual. The members could not assign to the corporation such property rights in order to have the corporation litigate those rights for them. This is an unheard-of proposition.

The first allegation of the defendants that the bill is defective is: "The complainants have a full, complete and adequate remedy at law." We have found as a matter of law that the plaintiff corporation has no legal interest in the action and therefore cannot be considered in this discussion.

The plaintiff Samec had a remedy at law which was as full, complete and adequate as the proceedings we now have under consideration. Upon his arrest and conviction by the alderman or justice of the peace he could have taken an appeal to the Court of Quarter Sessions of Berks County where every question raised here could have been promptly determined by that court. We think, therefore, that he had, as we have stated, a full, complete and adequate remedy at law, and therefore this court has no jurisdiction to entertain his bill.

We again direct attention to the ninth syllabus of Long et al. v. Metzger et al., State Board of Medical Education, etc., supra, in which the Supreme Court held:

"Courts will not interfere by injunction where the injury inflicted or threatened is merely the vexation of arrest and punishment of the complainant, who is left free to litigate the question of unconstitutionality of the statute or ordinance or its construction or application, in making his defense at the trial or prosecution for its violation."

Under certain circumstances where a bill in equity is brought, instead of requiring the plaintiffs to bring a new suit it might be certified to the law side of the court, but there is no situation in which we could certify this bill of complaint to the law side of the court of this county. We could turn this bill into no proper proceeding on the law side of this court; therefore the only thing which remains for us to do is to dismiss the bill.

And now, December 16, 1935, it is ordered, adjudged and decreed, for the reasons hereinbefore set forth, that the bill of the plaintiffs ought to be and is hereby dismissed; the costs to be paid by the plaintiffs.